IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

**PIONEER TRUST BANK, N.A.**,

       Plaintiff-Appellant,                                **Case No. 6:21-cv-01861-MC**

       v.                                                **OPINION AND ORDER**

**CRAIG D. ANDERSON; LAURA V. ROBERTS,**

       Defendants-Appellees.

_____

**MCSHANE, Judge**:

      Appellant Pioneer Trust Bank seeks leave to appeal an order of the U.S. Bankruptcy Court for the District of Oregon denying Appellant's Motion to Confirm the Settlement. The first issue before this Court is whether to grant Appellant leave to appeal. Because Appellant has met the statutory burden for leave to appeal under 28 U.S.C. § 1292(b), this Court has jurisdiction under 28 U.S.C. § 158(a)(3), and Appellant's Motion for Leave to Appeal (ECF No. 7) is GRANTED.

      The second issue before this Court is whether Oregon's Statute of Frauds, codified at ORS 41.580, applies to a settlement agreement (the "Agreement") between Appellant and Appellees Craig Anderson and Laura Roberts and, if so, whether the Agreement satisfies ORS 41.580(1). Because Appellant has failed to demonstrate that the Agreement was outside the

1 – OPINION AND ORDER

scope of ORS 41.580(1) or, in the alternative, that the Agreement satisfied ORS 41.580(1), the Bankruptcy Court's decision denying Appellant's motion to confirm the Agreement is AFFIRMED.

## BACKGROUND

Appellant is a bank that made several personally guaranteed loans to business entities owned by Appellees.. Appellant's Mot. Appeal Ex. B, at 5, ECF No. 7. Appellees filed a petition for Chapter 7 bankruptcy on December 17, 2018. *Id.* Ex. B, at 4. On July 24, 2019, Appellant filed an adversary case against Appellees, asserting multiple claims totaling approximately $1,360,000. *Id*. Ex. B, at 5. Although Appellees initially expressed trepidation, the parties began discussing a potential settlement in early June of 2020. *Id*. Negotiations continued through the end of that month, with the parties' attorneys believing that they had reached agreeable settlement terms. *Id*. However, Appellees refused to sign the Agreement, and Appellant filed a motion with the Bankruptcy Court to enforce it. *Id.* Ex. B, at 6.

On August 24, 2021, the Bankruptcy Court held an evidentiary hearing to determine whether the Agreement constituted an enforceable settlement agreement. *See* Mem. Supp. Appellant's Mot. Appeal Ex. A, ECF No. 7 (transcript of hearing). At that hearing, Appellant argued that Appellees had subscribed to the Agreement in accordance with ORS 41.580 when they electronically signed emails to their attorney stating their support for the proposed terms of settlement. *See Id*. The Bankruptcy Court issued an oral ruling on November 5, 2021, holding that the email signatures did not satisfy the subscription requirement of ORS 41.580, resulting in and unenforceable agreement. *See Id*. Ex. B. Appellant filed a timely motion for leave to appeal and seeks judicial review of the Bankruptcy Court's decision refusing to confirm the Agreement. Notice of Appeal, ECF No. 1.

2 – OPINION AND ORDER

## STANDARDS OF REVIEW

As a preliminary matter, the Court has jurisdiction of this case under 28 U.S.C. § 158(a)(3). When considering whether to grant leave to appeal under § 158(a)(3), courts in the Ninth Circuit apply the same standard as 28 U.S.C. § 1292(b). *In re Kashani*, 190 B.R. 875, 882 (B.A.P. 9th Cir. 1995). Granting leave to appeal under § 1292(b) is appropriate if (1) there is a controlling question of law, (2) there are substantial grounds for difference of opinion, and (3) an immediate appeal will materially advance the termination of litigation. *Id*. A question of law is controlling when "resolution of the issue on appeal could materially affect the outcome of litigation[.]" *In re Cement Antitrust Litig. (MDL No. 296)*, 673 F.2d 1020, 1026 (9th Cir. 1981). Substantial grounds for difference of opinion exist when "novel legal issues are presented, on which fair-minded jurists might reach contradictory conclusions." *ICTSI Oregon, Inc. v. Int'l Longshore & Warehouse Union*, 22 F.4th 1125, 1130 (9th Cir. 2022) (quoting *Reese v. BP Exploration (Alaska) Inc.*, 643 F.3d 681, 688 (2011)). An appeal materially advances the termination of litigation when resolving the controlling question "may appreciably shorten the time, effort, or expense of conducting" court proceedings. *Id.* at 1131 (quoting *In re Cement*, 673 F.2d at 1027).

Even assuming that the Bankruptcy Court's decision was not final, the present case is ripe for interlocutory appeal under § 158(a)(3). The case presents two controlling questions of law: (1) whether the Agreement is within the scope of ORS 41.580 and (2) whether the Agreement satisfied the requirements of ORS 41.580(1). Resolving either would materially affect the outcome of litigation. If the Agreement is outside the scope of ORS 41.580, or satisfied the provisions of that statute, then the case is settled as it pertains to Appellant and the litigation is ended. Immediate appeal will materially advance the termination of litigation because a

finding that the Agreement is valid would remove Appellant from the litigation and conclude the Bankruptcy Court proceedings.

Having determined that this case is ripe for interlocutory appeal, the Court now reviews the Bankruptcy Court's findings of fact for clear error and conclusions of law de novo. *In re Filtercorp, Inc. v. Gateway Venture Partners III, L.P.*, 163 F.3d 570, 576 (9th Cir. 1998).

## DISCUSSION

### I. The Agreement Is Within the Scope of ORS 41.580

Appellant argues that the Agreement is valid because it does not fall within the scope of ORS 41.580(1). Appellant's Mot. Appeal 11–12. Under ORS 41.580(1), certain agreements are void unless they are "in writing and subscribed by the party to be charged[.]" Under ORS 41.580(1)(h), these requirements apply to an agreement "to modify or amend the terms under which the person has lent money or otherwise extended credit" or "to make any other financial accommodation pertaining to an existing debt or other extension of credit." However, ORS41.580(2)(b) provides an exception to these requirements that allows an agreement to be enforced "if the party against whom enforcement is sought admits in the party's pleading, testimony or otherwise in court that the agreement, promise or commitment was made."

### A. The Agreement Is a Modification of Terms Under Which Money Was Lent

Appellant argues that the Agreement is not a modification of loan terms and thus is not subject to the requirements of ORS 41.580(1). Appellant's Mot. Appeal 11. Appellant's argument relies on an Oregon appellate court's determination that an agreement to settle an existing loan did not constitute a modification of loan terms subject to ORS 41.580(1). *See Capital Credit v. Armani*, 227 Or. App. 574 (2009). In *Capital Credit*, the defendant had guaranteed student loans for a third party, who eventually defaulted on those loans. *Id.* at 576.

The defendant subsequently reached a settlement agreement with the plaintiff collection agency in which the defendant agreed to pay the principal loan amount and the plaintiff agreed to waive the accrued interest. *Id*. at 577. The settlement agreement gave the creditor the "right to demand and collect from [defendant] *all or any portion of [b]orrower's indebtedness*" *Id*. at 580 n. 4 (emphasis added). In comparison, the original guaranty required the defendant to guarantee and remit "*any and all indebtedness*" of the borrower to the creditor. *Id.* (emphasis added). Thus, the *Capital Credit* court held that the settlement agreement was not a modification of the original guaranty because "[t]he settlement was consistent with the text of the guaranty[.]" *Id*.

The facts of the present case differ sharply from those found in *Capital Credit*. Here, Appellees owed Appellant a "default indebtedness" of approximately $1,250,000 for the underlying business loans. Appellant's Mot. Appeal, Ex. A, at 40. The Agreement that Appellant seeks to enforce provided that Appellees would remit "[t]otal payments of $115,000." *Id*. Ex. E, at 1. The Agreement also contained provisions regarding life insurance for Appellees. *Id.* While Appellant has not provided the terms of the underlying loans for a textual comparison to be made, it seems highly improbable that the terms of the business loans would be textually consistent with the Agreement's terms regarding reduced total payments and the provision of life insurance for Appellees. In fact, emails during the negotiations indicate that despite an outstanding loan balance of approximately $1,400,000, Appellant agreed to accept a "single-digit percentage recovery" in the event that Appellees lived more than 10 years after entering into the Agreement. *Id.* Ex. E, at 3; Ex. A, at 114. Thus, this Court agrees with the Bankruptcy Court that the "[A]greement sought to modify the repayment terms of loans guaranteed by [Appellees] and is therefore subject to the requirements for a writing subscribed by the party against whom enforcement is sought. ORS 41.580(1)(h)." *Id.* Ex. B, at 7.

5 – OPINION AND ORDER

Although Appellant relies solely on *Capital Credit*, that case did not involve ORS 41.580(1)(h). 227 Or. App. at 580 n.4 ("The parties do not discuss, and we do not decide, the effect of ORS 41.580(1)(h) on the settlement agreement."). However, this Court finds that, even assuming the Agreement did not constitute a modification, the provisions regarding reduced payments and life insurance qualify as "financial accommodation[s] pertaining to an existing debt or other extension of credit" as that phrase is used in ORS 41.580(1)(h). For that reason, ORS 41.580(1) would still apply.

**B. The Agreement Is Not Subject to the ORS 41.580(2)(b) Exception**

Appellant argues that even if the Agreement is a modification of loan documents, it is outside the scope of ORS 41.580(1) under the "otherwise in court" exception contained in ORS 41.580(2)(b). Appellant's Mot. Appeal 12. Appellant's argument is premised on the notion that Appellees' then-attorney stated in court that the parties had no changes to make to the Agreement and that this statement satisfied the "otherwise in court" provision. *Id.* at 12–13. The Bankruptcy Court rejected Appellant's argument, holding that "otherwise in court" refers to sworn testimony, including "admissions in depositions properly filed before the court." *Id.*, Ex. B, at 11.

In its Motion for Leave to Appeal, Appellant does not dispute the Bankruptcy Court's conclusion, but reasserts its position that there is no Oregon case law interpreting "otherwise in court." *Id.* at 12. Appellant further argues that "*statements* made in open court by the attorney that a settlement has been reached are binding at least for the purposes of establishing that a settlement exists." *Id*. (emphasis added). It is true that "*[s]tipulations* made in open court are as binding on the parties as if reduced to writing and formally executed." *In re Herrera*, 23 B.R. 796, 797 (B.A.P. 9th Cir. 1982) (emphasis added). However, if the record shows that a

6 – OPINION AND ORDER

stipulation spoken in court is unclear or unintended, then it may not be enforced. *See City of Salem v. Trussell*, 3 Or. App. 465, 470 (1970). There does not appear to be a transcript of the hearing where Appellees' then-attorney made the statement concerning the Agreement. Instead, Appellant merely argues that "the Debtors' attorney represented in open court that the Debtors had no further changes to the documents implementing the settlement." Appellant's Mot. Appeal 12. There is no indication the attorney made the statements, whatever they were, under oath. Instead, the Bankruptcy Court noted:

> Unlike *Capital Credit*, Mr. Coyle's statements in status hearings were not sworn testimony, and were made prior to [Appellant's] motion to enforce this settlement. I find that Mr. Coyle's statements before the motion to enforce this settlement was filed do not satisfy the exception in ORS 41.580(2)(b).
>
> Finally, "otherwise in court" is not so broad as to encompass the e-mails sent [by Appellees] or Coyle's statements in status hearings.
>
> While there is no Oregon case law defining "otherwise, in court" under ORS 41.580(2)(b), that language is identical to an exception to the statute of frauds applicable to Oregon's Uniform Commercial Code for the sale of goods.
>
> ORS 72.2010(3)(b) uses the following identical language to ORS 41.580(2)(b) in its exception. "If the party against whom enforcement is sought admits in pleading, testimony, or otherwise in court, that a contract for sale was made, the agreement is enforceable." The Oregon UCC statute of frauds is modeled after the model Uniform Commercial Code Section 2-201(3)(b).
>
> *Corbin on Contracts* explains that courts have interpreted "otherwise in court" strictly, primarily to give effect to admissions in depositions properly filed before the court. *See* [] *Corbin on Cont[r]acts*, section 14.2(b)(1).
>
> Neither the e-mail sent to [Appellees] nor Mr. Coyle's statements at the status hearing are sworn testimony and do not meet the strict reading of "otherwise in court" as adopted by the courts in various UCC cases.

Appellant's Mot. Appeal, Ex. B, at 10-12.

The Court agrees and concludes the Bankruptcy Court did not err in holding the attorney's unsworn statements at a status hearing do not fall under the "otherwise in court" exception to the statute of frauds provided in ORS 41.580(2)(b).

7 – OPINION AND ORDER

## II. The Agreement Did Not Satisfy the Subscription Requirement of ORS 41.580

Appellant argues that the Agreement is valid, even if ORS 41.580 applies, because Appellees satisfied the subscription requirement of ORS 41.580(1) when they electronically signed emails to their then-attorney voicing their support for the Agreement. Appellant's Mot. Appeal 9–10. Appellant's argument relies on Oregon's Uniform Electronic Transactions Act, codified at ORS 84.001 to ORS 84.061. Appellant specifically relies on ORS 84.019, which states that "[i]f a law requires a signature, an electronic signature satisfies the law." Under ORS 84.004(8), an "electronic signature" is defined as "an electronic sound, symbol or process attached to or logically associated with a record and executed or adopted by a person with the intent to sign the record." However, the Oregon Statute of Frauds is unique in that it uses the word "subscribed" whereas most states' statutes of fraud use the word "signed." *Com. Credit Corp. v. Marden*, 155 Or. 29, 38 (1936). "[B]y requiring that the agreement or memorandum must be *subscribed* the Oregon Legislature must have intended that the signature of the party to be bound should be affixed at the end of the agreement or memorandum." *Id*. at 37.

Appellant cites a District of Oregon case that found an electronically signed email satisfied the statute of frauds. *See Edwards Vacuum, LLC. V. Hoffman Inst. Supply, Inc.*, No. 3:20-cv-1681-SI, 538 F.Supp.3d 1132 (D. Or. May 10, 2021). Appellant's reliance on *Edwards Vacuum* is misplaced, however, as the court in that case was applying Delaware's statute of frauds and did not consider the unique aspects of Oregon's subscription requirement. *Id*. at 1142-43. Appellant is correct that an electronic signature, if intended as such, is valid for the purposes of ORS 41.580(1). But a valid signature must still satisfy Oregon's unique subscription requirement in order to comply with ORS 41.580(1). Even assuming that Appellees intended to bind themselves to the Agreement by signing their email responses—which is not clear from the

record—the signatures were affixed to individual emails, not to the bottom of the Agreement. This Court agrees with the Bankruptcy Court, who noted Appellant "has not provided any authority to support its assertion that an e-mail that was sent prior to the memorialization of a final written agreement satisfies the subscription requirement, and we could not find any." Appellant's Mot. Appeal Ex. B, at 8. Because these signatures do not satisfy the subscription requirement of ORS 41.580(1), the Agreement was not valid under the Oregon Statute of Frauds.

### CONCLUSION

Appellant's request for leave to appeal is GRANTED and the Bankruptcy Court's decision is AFFIRMED.[1]

IT IS SO ORDERED.

DATED this 14th day of March, 2022.

                                                                                        /s/ Michael McShane
                                                                                         Michael McShane
                                                                       United States District Judge

---

[1] Appellant moves to strike Appellees' memorandum in opposition to Appellant's motion for leave to appeal. ECF No. 10. Appellant argues Appellees filed the memorandum 12 days late. First, the Court notes Appellees appear pro se. Second, the Court notes Appellees filed sworn declarations stating court staff informed Appellees their memorandum was due January 19, 2022. Anderson Decl., ECF No. 12-1; Roberts Decl., ECF No. 12-2. Third, and most importantly, Appellant makes no attempt to argue that even assuming Appellees' motion was 12 days late, Appellant was prejudiced in any way at all. Appellant's motion to strike, ECF No. 10, is DENIED. Similarly, Appellees' motions to strike Appellant's reply, ECF No. 14-15, are DENIED.